IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 20, 2022 Session

**RAYMOND SINES v. REGINA TINNIN**

**Appeal from the General Sessions Court for Bledsoe County**
**No. 2018-DV-3220   Howard L. Upchurch, Judge**

_____

**No. E2021-01434-COA-R3-CV**
_____

This post-divorce appeal arises from the trial court's designation of the primary residential parent of two minor children. Due to the lack of a transcript or a statement of the evidence, we must affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, J., joined.

Joseph F. Della-Rodolfa, Knoxville, Tennessee, for the appellant, Raymond Sines.

Douglas Thomas Bates, IV, Centerville, Tennessee, for the appellee, Regina Tinnin.


**OPINION**

**I.    BACKGROUND**

Although we do not have a verbatim transcript of the evidence or a statement of the evidence, we glean the following facts from the pleadings and trial court's orders in the technical record. Raymond Sines ("Father") and Regina Tinnin ("Mother") married in August 2013. Two children were born of the marriage, Chloe and Odin (collectively "the children"), born in June 2014 and November 2015, respectively. The parties lived in Pikeville, Tennessee during the last five years of the marriage. The parties work outside the home. Mother owns and operates a soap business. Father is self-employed.

In early 2018, Mother left the marital residence with the children and relocated to Centerville, Tennessee. She refused to provide her exact location to Father but permitted

some visitation until Father filed for divorce on March 19, 2018 and sought emergency custody of the children. The parties then negotiated a temporary parenting plan, providing equal co-parenting time pending the outcome of the proceedings. The children participated in counseling. The parties were divorced by order and final decree of the court on December 27, 2019, but reserved issues relating to the parenting plan to be heard later.

The remaining issues pertaining to co-parenting proceeded to a hearing over the course of two days on January 24 and February 4, 2020. Mother, Father, a counselor, and an educator affiliated with Montessori testified. The trial exhibits, including what the trial court described as a "lengthy report which was introduced by stipulation from Dr. William Hillner," are not in the appellate record. Following the hearing, the trial court's March 12, 2020 ruling designated Mother as the primary residential parent, with Father receiving equal co-parenting time.[1] The trial court surmised that "the marriage was defined by . . . repeated petty disputes" and noted that each party used his or her trial testimony "to paint the other in a bad light and to emphasize the other's negative traits and mistakes that he or she made in the marriage." The trial court found "significant issues" with each parent's credibility "on certain matters that were addressed during his or her testimony." In particular, the trial court "put significant weight upon [the factor of] each parent's ability to facilitate and encourage the parent-child relationship with the other party," finding as follows:

> And this factor, in my mind, clearly favors the mother. And I think I have to look no further than the father's emergency custody request in March of 2018, after the mother had moved to Hickman County—I believe it's Centerville where she moved to. The father secured an order based upon pleadings that were either incomplete or contained incomplete facts or exaggerated facts, perhaps even false allegations.

The trial court ordered the parties to jointly decide the children's non-emergency medical care, religious upbringing, education, and extracurricular activities. The trial court incorporated its March 12, 2020 ruling into an order entered July 7, 2020. Pursuant to Tennessee Rule of Civil Procedure 59, Father moved the court to alter or amend its order arguing that the parenting plan ordered by the court was in error and contrary to the weight of the evidence and the statutory factors. He requested to be designated primary residential parent. By order entered November 5, 2021, the trial court denied Father's motion. The trial court noted that during the hearing on his Rule 59 motion, Father abandoned his previous request to reopen the proof. Father appealed.

---

[1] The trial court ruled that the parenting time would remain equal if Father secured housing within seventy-five miles of Hickman County.

## II. ISSUES

The sole issue on appeal is whether the trial court abused its discretion in its designation of Mother as the primary residential parent.

## III. STANDARD OF REVIEW

We review a non-jury case de novo upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). This presumption of correctness applies only to findings of fact and not to conclusions of law. *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011).

Trial courts have "broad discretion in formulating parenting plans" because they "are in a better position to observe the witnesses and assess their credibility." *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (citing *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013)). "A trial court's broad discretion on custody matters extends to the question of which parent should be named primary residential parent." *Grissom v. Grissom*, 586 S.W.3d 387, 391 (Tenn. Ct. App. 2019). On appeal, we review a trial court's decision regarding the details of a residential parenting schedule for an abuse of discretion. *Armbrister*, 414 S.W.3d at 693 (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)). "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). "A trial court abuses its discretion in establishing a residential parenting schedule 'only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" *Armbrister*, 414 S.W.3d at 693 (quoting *Eldridge*, 42 S.W.3d at 88).

## IV. DISCUSSION

### 1.

"In choosing which parent to designate as the primary residential parent for [a]

child, the court must conduct a 'comparative fitness' analysis, requiring the court to determine which of the available parents would be comparatively more fit than the other." *Chaffin v. Ellis*, 211 S.W.3d 264, 286 (Tenn. Ct. App. 2006) (citing *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983)). "In engaging in this analysis, the court must consider the factors set out in Tennessee Code Annotated § 36-6-106(a)." *Id.* (footnote omitted). Those factors are as follows:

(a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). . . . ;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-106(a)(1)–(15).[2] Although the court was obligated to consider the applicable statutory factors, "the statute does not require a trial court, when issuing a

---

[2] Effective March 18, 2022, the General Assembly has amended Tennessee Code Annotated § 36-6-106(a) by adding a sixteenth factor for the court's consideration: "[w]hether a parent has failed to pay court-ordered child support for a period of three (3) years or more[.]" *See* 2022 Tenn. Pub. Acts, Ch. 671 § 1 (H.B. 1866). It is not applicable to this case.

memorandum opinion or final judgment, to list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination." *Burnett v. Burnett*, No. E2002-01614-COA-R3-CV, 2003 WL 21782290, at *6 (Tenn. Ct. App. July 23, 2003).

Father takes issue with the trial court's permanent parenting plan. Father requests reversal of the trial court's designation of Mother as the primary residential parent, claiming that the court's analysis was flawed. Father claims that the factors listed in Tennessee Code Annotated section 36-6-106(a) at the time of the hearing either weigh in his favor or should be equally weighed. Mother disagrees and defers to the trial court's order.

As to the first factor, the trial court found that because each parent performed "an inordinate amount of parental responsibilities," this factor did not favor either parent. On the second factor, the court found that it "substantially" favored Mother and "work[ed] against" Father. The trial court found that Mother "will do her very best to facilitate the relationship that the children have with [Father]," but was unconvinced that Father would do the same. The trial court found that the third factor did not apply and that the fourth factor favored Father to some degree. The trial court found that because "the parties pretty well equally divided parenting responsibilities and obligations," the fifth factor did not favor either parent. As to the sixth factor, the trial court acknowledged that Chloe "may have a closer relationship with [Father] than with [Mother]," but did not weigh this factor heavily. The trial court found that the seventh factor did not apply to its analysis because the children were "excellent" and did not display "significant emotional or developmental needs." As to the eighth factor, the trial court found that it weighed in Father's favor due to Mother's past drug use, but also kept in mind testimony concerning Father's abusive treatment toward Mother. The trial court found that the ninth factor did not favor either party because each parent lives near relatives. On the tenth factor, the trial court found as follows:

> These children have lived in Hickman County, in Centerville, now for two years. One child is 4 years of age, and one child is 5 years of age. So that's half their lives . . . . Packing these children up and moving them to another location, another area, is just simply not in their best interests. Now stability and continuity, a lot of courts describe that as the alpha and omega in parenting decisions. And I do put a great deal of weight on that, and I find that stability and continuity can and will be achieved by allowing these children to remain with [Mother] and [Mother] being the primary residential parent. And I find that's very important for these children.

On the eleventh factor, the trial court found that Father exaggerated his testimony about emotional abuse by Mother and noted Father's tendency to "make such a huge deal about the smallest things." The trial court found that this factor "might slightly favor [Mother],"

- 6 -

but did not apply to the case to any significant degree. As to the twelfth factor, the trial court found that both parents have "wonderful" families. Concerning the thirteenth factor, the trial court did not place weight on the evidence of the children's preference made to their counselor when they were "very young." The trial court found that the fourteenth factor favored Mother to some degree. As to the fifteenth factor, the court found that it had addressed all relevant factors.

Again, no transcript or statement of the evidence relating to the trial was provided in the appellate record. This significantly hinders our ability to determine whether Father is entitled to the relief he seeks. "The absence of either a transcript or a statement of the evidence significantly ties the hands of the appellate court." *Chandler v. Chandler*, No. W2010-01503-COA-R3-CV, 2012 WL 2393698, at *6 (Tenn. Ct. App. June 26, 2012). It is Father's duty as the appellant "to prepare the record which conveys a fair, accurate, and complete account of what transpired in the trial court regarding the issues which form the basis of the appeal." *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005); *see also* Tenn. R. App. P. 24(b), (c) ("[T]he appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal."). As noted in previous cases, the lack of a transcript or statement of the evidence is generally fatal to the party having the burden on appeal. *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992). It is well settled that, "in the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the Trial Court to support its judgment and this Court must therefore affirm the judgment." *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 48 (Tenn. Ct. App. 2013) (quoting *Outdoor Mgmt., LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007)); *see also Word v. Word*, 937 S.W.2d 931, 932 (Tenn. Ct. App. 1996). With these considerations in mind, we affirm the trial court's ruling designating Mother as the primary residential parent.

2.

At the conclusion of her brief, Mother seeks to recover her attorney fees incurred on appeal. However, this request was not presented in the statement of issues or supported by argument in Mother's brief. A request for attorney fees is waived if not included in the statement of issues. *See Keeble v. Keeble*, No. E2019-01168-COA-R3-CV, 2020 WL 2897277, at *4 (Tenn. Ct. App. June 3, 2020) (citing *Killingsworth v. Ted Russell Ford, Inc.*, 205 S.W.3d 406, 410–11 (Tenn. 2006)). Accordingly, Mother's request for attorney fees on appeal is waived.

## V. CONCLUSION

We affirm the decision of the trial court. The case is remanded for such further

proceedings as may be necessary and consistent with this Opinion. Costs of the appeal are taxed to the appellant, Raymond Sines.

_____

JOHN W. MCCLARTY, JUDGE